UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RALPH A KNAPTON, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) No. 1:13-cv-00168-GZS |
| | ) |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) |
| | ) |
| Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

After consideration of Plaintiff Ralph Knapton's applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's applications for disability benefits.

Following a review of the record, and consideration of the parties' written and oral arguments, as explained below, the recommendation is that the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

Because the Appeals Council "found no reason" to review the decision, the Acting Commissioner's final decision is the March 16, 2012, decision of the Administrative Law Judge (ALJ). The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.

At step 1 of the sequential evaluation process, the ALJ concluded that Plaintiff satisfied the insured status requirements of Title II through December 31, 2011, and had not engaged in

substantial gainful activity from August 1, 2006, the alleged date of the onset of disability. (ALJ Decision, Findings and Conclusions, ¶¶ 1, 2.) In the second stage of the analysis, the ALJ found that Plaintiff has the following severe physical/mental impairments: chronic obstructive pulmonary disease, sleep apnea, type II diabetes, obesity, and anti-social personality disorder. (*Id.* ¶ 3.) At step 3 of the process, the ALJ determined that Plaintiff's combination of impairments would not meet or equal any listing in Appendix 1 to 20 C.F.R. Part 404, Subpart P. Using the psychiatric review technique, the ALJ determined that Plaintiff suffers mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties maintaining concentration, persistence, and pace. The ALJ also observed that Plaintiff had no episodes of decompensation. (*Id.* ¶ 4.)

Prior to further evaluation at steps 4 and 5, the ALJ assessed Plaintiff's residual functional capacity. The ALJ found that Plaintiff has the residual functional capacity to perform light work subject to a restriction on walking no more than 15 minutes at a time, and 15 minutes per hour. Additionally, the ALJ determined that Plaintiff can only occasionally climb ramps or stairs, balance, crawl, stoop, kneel, crouch, or crawl, and that Plaintiff must avoid extreme temperatures, pulmonary irritants, and workplace hazards such as uneven work surfaces. Finally, the ALJ concluded that Plaintiff's work must be limited to simple, routine, unskilled work, with no interaction with the public and only superficial interaction with coworkers and supervisors. (*Id.* ¶ 5 & n.2.) The ALJ, therefore, found that the assessed degree of limitation precludes Plaintiff from performing any past relevant work, namely, skilled work as a retail manager. (*Id.* ¶ 6.)

The record and the ALJ findings also establish that Plaintiff was born in 1959, making him an individual closely approaching advanced age as of the date of alleged onset; that Plaintiff has a high school education; and that Plaintiff can communicate in English. (*Id.* ¶¶ 7, 8.) The ALJ

found that the existence of transferable skills was not material to evaluation of Plaintiff's claim under the Medical-Vocational Guidelines. (*Id.* ¶ 9.) Upon review of Plaintiff's vocational profile and the residual functional capacity findings as determined by the ALJ, a vocational expert concluded that Plaintiff could still engage in other substantial gainful employment, including as a mail clerk or courier, and in "various light assembly productions jobs," such as assembler of medical supplies. (*Id.* ¶ 10.) Accepting this testimony, the ALJ concluded that Plaintiff is not disabled under the Social Security Act. (*Id.* ¶¶ 10, 11.)

## DISCUSSION OF PLAINTIFF'S STATEMENT OF ERRORS

### A. Standard of Review

The Court must affirm the administrative decision so long as it applies the correct legal standards and is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### B. Discussion

Plaintiff argues that the ALJ erred in his residual functional capacity finding by failing to comment upon and address specifically the limiting effects of obesity. Additionally, Plaintiff maintains that the ALJ committed error in the step 5 analysis when the ALJ failed to inquire of the vocational expert the degree to which the occupational base of light exertion jobs is eroded by

Plaintiff's residual functional capacity. Plaintiff contends that it was insufficient for the ALJ simply to ask the vocational expert to identify jobs that Plaintiff could perform. (Statement of Errors, ECF No. 15.)

## 1. *ALJ's discussion of obesity*

Plaintiff argues that the ALJ erred in his residual functional capacity assessment not because the record lacks substantial evidence to support his findings, but because in his analysis, the ALJ did not address adequately the particular limiting impact of obesity on Plaintiff's constellation of impairments. (Statement of Errors at 7-8.)

The Social Security Administration's rulings include a commitment to evaluating the limiting impact that obesity has on social security claimants. *See* SSR 02–1p, *Titles II and XVI: Evaluation of Obesity*, 2000 WL 628049 (Sept. 12, 2002). SSR 02-1p recognizes that obesity is "a risk factor that increases an individual's chances of developing impairments in most body systems" and "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." 2000 WL 628049, at *3. According to the Ruling, obesity is considered initially as part of the evaluation process at steps 2 and 3, and also as part of the assessment of a claimant's residual functional capacity and readiness to perform work activity as part of steps 4 and 5. *Id.* For example, the standards for claim evaluation require the adjudicator to make an assessment "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at *6. Nevertheless, consideration of obesity is not subject to the heightened demands that require protracted discussion. "As with any other impairment," the Commissioner represents that adjudicators "will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *Id.* at *7.

Based on prior decisions in this District, it would be error for an ALJ to identify obesity as a severe impairment at step 2, and then fail "to describe how obesity affected the plaintiff's RFC." *Kaylor v. Astrue,* No. 2:10–cv–33–GZS, 2010 WL 5776375, at *3 (D. Me. Dec. 30, 2010) (rec. dec., *adopted* Feb. 7, 2011). The District has maintained that view regardless of a plaintiff's ability to point to evidence demonstrating the "specific functional deficits" that result from obesity. *Id.* (collecting cases). *See also Fothergill v. Astrue*, 2:11-CV-247-DBH, 2012 WL 1098444, at *2 (D. Me. Mar. 29, 2012) (rec. dec. *adopted* Apr. 17, 2012) (remanding for failure to discuss impact of obesity and noting the absence in the record of a supportive expert RFC assessment that accounted for the limiting effects of obesity).

Here, the ALJ identified obesity as a severe impairment at step 2, even though Plaintiff had not alleged obesity to be an independent impairment. Thereafter, as part of his step 3 analysis, the ALJ discussed listings 3.02A, 3.02B, and 12.08, which concern chronic pulmonary insufficiency, chronic restrictive ventilatory disease, and personality disorders, respectively. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing of Impairment"). Listings 3.02A and 3.02B establish objective measures for the impairment assessment. Significantly, Plaintiff did not offer evidence or argument as to how his obesity impacts the listings for the respiratory diseases or personality disorders from which Plaintiff suffers. Because Plaintiff failed to present any such evidence or argument, there is no reversible error or discernable harm that arises from the ALJ's failure to discuss obesity in connection with the step 3 Listing evaluation. *See Cox v. Astrue*, 2:10-CV-26-DBH, 2010 WL 5260843, at *2 (D. Me. Dec. 16, 2010) (rec. dec. *adopted* Jan. 4, 2011) (reasoning that where the plaintiff "did not suggest what relevance her obesity would have to any particular Listing," there was no "showing that any error by the administrative law judge in this regard would be anything other than harmless").

In his residual functional capacity assessment, after discussing the limiting impact of certain identified impairments, the ALJ wrote, "the findings herein incorporate the consideration given to the impact of obesity on claimant's functional limitations." (PageID # 45.) Lawrence Johnson, M.D., a consulting physician, after specifically considering obesity (PageID # 382), concluded that Plaintiff could walk approximately six hours in an eight-hour workday, while the ALJ restricted Plaintiff to 15 minutes per hour. The record establishes that the ALJ plainly considered Dr. Johnson's residual functional capacity assessment. (*Id.*, # 46.) In fact, the ALJ not only considered Plaintiff's obesity, but found greater related restrictions than the consulting physician who considered the effect of Plaintiff's obesity on his functional capacity. In short, the fact that the ALJ did not further discuss the issue as part of the residual functional capacity assessment is not error.

### 2. *Failure to ask the vocational expert about erosion of the light occupational base*

Plaintiff maintains that the ALJ erred by failing to ask the vocational expert to describe the degree to which the light work occupational base would be eroded by the ALJ's residual functional capacity hypothetical. (Statement of Errors at 1-7.) According to Plaintiff, this omission amounts to misapplication of the Guidelines at Step 5. (*Id.* at 1-2.)

The Social Security Administration's Guidelines are designed to direct a finding of disabled or not disabled when a claimant meets certain "functional and vocational patterns." Medical-Vocational Guidelines, Appendix 2 to 20 C.F.R. Part 404, Subpart P. The Guidelines operate not only to streamline the step 5 determination in many cases, but also to "increase the consistency and promote the uniformity with which disability determinations are made." Social Security Ruling 83-10, *Determining Capability to Do Other Work—the Medical-Vocational Rules of Appendix 2*, 1983 WL 31251, at *1. Pursuant to the Guidelines: "Where the findings of fact

made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." *Id.* § 200.00(a). However, if "any one of the findings of fact does not coincide with the corresponding criterion of a rule, . . . full consideration must be given to all of the relevant facts of the case." *Id.* "If an individual's specific profile is not listed within . . . Appendix 2, a conclusion of disabled or not disabled is not directed." *Id.* § 200.00(d).

According to Defendant's regulations, the need to walk and stand is "the primary difference between sedentary and most light jobs." *Id.* at *5. "Relatively few unskilled light jobs are performed in a seated position." *Id.* However, a number of jobs that qualify as light rather than sedentary require or allow the employee to be seated most of the time. Such jobs often involve pushing and pulling controls, which entails "greater exertion than in sedentary work." *Id.* Sedentary work involves "lifting no more than 10 pounds at a time." *Id.* In this case, the ALJ found that Plaintiff has a residual functional capacity for weights greater than 10 pounds, but also that Plaintiff cannot walk for significant periods of time. As Plaintiff fairly argues, therefore, given the significant restriction on Plaintiff's ability to walk during the work day, the ALJ's residual functioning capacity finding places Plaintiff between the Guideline's light-work category and sedentary-work category.

Plaintiff argues that the ALJ should have asked the vocational expert whether Plaintiff's residual functional capacity effectively eroded the occupational base of light work. Plaintiff contends that the question was critical because had the vocational expert responded affirmatively, the ALJ would have been compelled to look to table 1, rule 201.14 of the Guidelines, which directs a finding of "disabled."

Plaintiff's argument suggests that where the residual functional capacity assessment places

7

an individual between two exertional categories, the ALJ is required ultimately to assign the person to one category. The regulations do not support Plaintiff's position. While SSR 83-12 provides that an adjudicator "will consider the extent of any erosion of the occupational base and access its significance," the Ruling does not direct that the ALJ must assign a claimant with a residual functional capacity assessment that falls between two levels to a particular level. Rather, the Ruling states that when the extent of erosion is not clear, the ALJ must consult a vocational expert, and that when the claimant "falls between two rules which direct opposite conclusions," it "*could*" mean that the occupational base available to the claimant is "little more than the occupational base for the lower rule and *could* justify a finding of 'Disabled.'" SSR 83-12, *Capability to Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Limitations within a Range of Work or Between Ranges of Work*, 1983 WL 31253, at *2 (emphasis added). In such cases, the Ruling advises that the adjudicator obtain assistance from a vocational expert, who:

> can assess the effect of any limitation on the range of work at issue (e.g., the potential occupational base); advise whether the impaired person's RFC permits him or her to perform substantial numbers of occupations within the range of work at issue; identify jobs which are within the RFC, if they exist; and provide a statement of the incidence of such jobs in the region in which the person lives or in several regions of the country.

*Id.* at *3.

The Guidelines provide that a particular exertional category (e.g., sedentary, light, etc.) applies if the claimant's "maximum sustained work capability [is] limited to sedentary [or light, or medium, or heavy] work as a result of severe medically determinable impairment(s)." Appendix 2, § 201.00. Here, as explained above, the ALJ's residual functional capacity finding places the Plaintiff between sedentary and light work, and there is nothing in the regulations that compels the assignment of Plaintiff to one of the categories. In other words, Plaintiff's maximum sustained work capability is not limited to sedentary work.

Because Plaintiff's residual functional capacity does "not coincide with the corresponding criteria of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled." Appendix 2, § 200.00(a). Given Plaintiff's residual functional capacity and his vocational profile, therefore, the ALJ properly could have concluded that rule 201.14 did not apply to require an outcome of disabled. *See Boone v. Barnhart*, 353 F.3d 203, 210 (3d Cir. 2003) (considering a similar scenario and holding that it was not error for the ALJ to find that the claimant could perform a "limited range" of light work rather than assessing the extent of erosion, "if . . . the ALJ has received the assistance of a VE in considering the more precise question whether there are a significant number of jobs in the economy that the claimant can perform"); *Santiago v. Barnhart*, 367 F. Supp. 2d 728, 735 (E.D. Pa. 2005) (following *Boone* and concluding that a sedentary table rule directing a finding of disabled was not applicable where the claimant fell in between the sedentary and light work categories); *Knowles v. Astrue*, No. 1:12-cv-00371, 2014 WL 1153063, at *7 (S.D. Miss. Mar. 21, 2014) (observing that capacity for subset of light work involving sitting most of the time with some pushing and pulling of arm or leg controls can take a claimant out of the sedentary maximum sustained work activity category); *Lackey v. Astrue*, No. 2:12-cv-00516, 2013 WL 1903662, at *3 (W.D. Pa. May 7, 2013) (involving claimant who could not meet six-hour stand requirement of light work but could stand for greater than the two-hour requirement of sedentary work); *Hence v. Astrue*, No. 4:12-cv-00001, 2012 WL 6691573, at *8 (E.D. Va. Nov. 30, 2012) (Mag. J. Rec. Dec., *adopted* Dec. 21, 2012) (involving claimant with a restriction to two hours standing and a capacity for light exertion).

In sum, Plaintiff has presented no persuasive authority or argument to support his contention that the ALJ was required to explore with the vocational expert whether the light work occupational base was eroded due to Plaintiff's residual functional capacity. The ALJ was

permitted to consider various factors, including the vocational expert testimony that identified jobs falling in the light work category.[1] On this record, reversible error is not demonstrated and the ALJ's step 5 finding is supported by substantial evidence.

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court affirm Defendant's final decision and enter judgment in favor of Defendant.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

April 3, 2014

---

[1] There remains an issue, which need not be resolved in this case, whether it would be appropriate for an ALJ, on the same or similar facts, not to apply Rule 201.14 and then attempt to satisfy the step 5 burden based on vocational expert testimony identifying, exclusively, sedentary occupations.